IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-03072-RM-BNB

VALERIE ANNE SCHLECHT,

Plaintiff,

v.

LOCKHEED MARTIN CORPORATION,

Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Defendant's Motion for Summary Judgment** [Doc. #90, filed

04/08/2013] (the "Motion").  I respectfully RECOMMEND that the Motion be GRANTED.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe her pleadings.  Haines v.

Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however,

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.

Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most

favorable to the party opposing the motion and that party must be afforded the benefit of all

reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S.

144, 157 (1970).  Summary judgment shall be rendered "if the movant shows that there is no

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted). "Conclusory and self-serving affidavits are not sufficient." Id.

## II.  UNDISPUTED MATERIAL FACTS[1]

1.  The defendant, Lockheed Martin Corporation ("LMC"), employed the plaintiff, Valerie Ann Schlecht, as an Optical Engineer from January 2005 until she was laid off on June 21, 2010.  *Motion*, Ex. A, 53:16; 202:1-4.

2.  The plaintiff transferred from LMC's facility in Sunnyvale, California, to its facility in Littleton, Colorado, in October 2007.  At the time of her transfer, it was expected that she would perform optical engineering work on the Orion space shuttle project.  *Motion*, Ex. B, ¶¶ 2-3, 5-6; Doc.#113, ¶ 2.[2]

3.  The plaintiff reported to Frank Moore.  Id. at ¶ 3.  Mr. Moore is the Systems Integration and Test Manager for the Inertial Guidance Laboratory ("IGL") at the Littleton facility.  *Motion*, Ex. B, ¶ 1.

4.  As an Optical Engineer, the plaintiff's job description provided that she would, among other things, design, analyze, and test optical and electro-optical systems and components; conduct research and development into lasers and laser maintenance; and apply research to complex optical systems to achieve the desired results.  Id. at ¶¶ 4-6; Ex. C.

5.  In her first year, the plaintiff's job was to organize four optics labs.  Id. at Ex. B, ¶ 5.

---

[1]The plaintiff "admits with clarification," "denies," or "disagrees" with many of the defendant's facts--both material and nonmaterial.  She does not always provide evidence to support her version of the material facts.  I do not consider statements of fact that are not material or are not supported by competent evidence.  See Fed.R.Civ.P. 56(e)(2).

[2]The plaintiff filed her Response on June 7, 2013.  On June 10, 2013, she filed numerous exhibits.  The exhibits are not labeled in an organized fashion.  Therefore, I cite to the docket and page numbers of the exhibits as they are assigned by the court's docketing system.

6.   The Orion project was delayed.  Instead of working as an Optical Engineer on the Orion project in 2009, the plaintiff performed tasks including the inventory and consolidation of various optical labs.  As a result, her time was primarily charged to overhead rather than billed to a project.  LMC does not receive any profit on time that is billed to overhead.  Id. at Ex. A, 205:9-21, 206:20-23; Ex. B, ¶ 6; *Plaintiff's Response to Defendant's Motion for Summary Judgment* [Doc. #103] (the "Response"), pp. 1, 2, ¶¶ 2, 5; Doc. #105, p. 17, ¶ 3; Doc. #113, ¶¶ 3-4.

7.   The plaintiff's wages were garnished in July 2008.  *Motion*, Ex. A, 70:4-13; Ex. D, ¶ 4; Doc. #113, ¶ 6.  The plaintiff called the Lockheed Martin Employee Service Center on August 1, 2008, and spoke to Rhonda Bolender, one of LMC's Court Order Professionals, when she noticed the garnishment on her pay stub.  *Motion*, Ex. A, 139:5-9; Ex. D, ¶ 7; *Response*, pp. 3-4, ¶ 10.  Ms. Bolender informed the plaintiff that she mailed a notice of the order to the address listed in the LMPeople computer system.  *Motion*, Ex. D, ¶ 7.

8.   The plaintiff's wages were garnished again in June 2009.  Id. at Ex. A, 70:4-13; Ex. D, ¶ 4.  The plaintiff called Ms. Bolender in July 2009 and stated that she did not receive a copy of the second garnishment notice.  Ms. Bolender informed the plaintiff that she sent the notice to her at the address listed in "LMPeople."  Id. at ¶ 9; Ex. A, 75:22-76:20.

9.   When they spoke, Ms. Bolender did not know that the plaintiff suffered from any medical conditions.  Id. at Ex. A, 139:12-24, 145:21-146:12; Ex. D, ¶ 10.

10.   The plaintiff's wages were not garnished again after the June 2009 garnishment.  Id. at Ex. A, 72:7-11; Ex. D, ¶ 13; *Response*, p. 4, ¶ 14.

4

11.   On July 21, 2009, the plaintiff sent an email to Mr. Moore stating that "[a]lthough my ADHD is usually under control with medication, it is severe enough to entitle me accommodations.  The reasonable accommodation that I want is for Lockheed Martin to notify *immediately* if they are served with a wage garnishment."  *Response*, p. 14, ¶ 7; Doc. #104, p. 18; *Defendant's Reply in Support of its Motion for Summary Judgment* (the "Reply"), p. 5, ¶ 7 (emphasis in original).

12.   On August 17, 2009, LMC's Executive Vice President, Joanne Maguire, informed employees that "the proposed 2010 federal budget . . . would affect [LMC's] current and future business. . . . We expect approximately 800 . . . positions to be eliminated . . . by year's end." *Motion*, Ex. H; Ex. A, 109:13-17; Ex. B, ¶ 11.

13.   Orion's funding was cut in 2010.  <u>Id.</u> at Ex. B, ¶13; *Response*, p. 4, ¶ 16.

14.   Because of cuts to the federal budget in 2010, LMC laid off approximately 490 employees in 2009 and 2010.  *Motion*, Ex. J, ¶ 6.

15.   On or about August 31, 2009, Mr. Moore notified the plaintiff that she was "on the long list for lay off (or words to that effect)," and he instructed her to spend her time updating her resume and searching for a new job.  <u>Id.</u> at Ex. A, 103:13-15, 108:6-17, 205:22-206:23; Ex. B, ¶14; Doc. #113, ¶ 15.

16.   The plaintiff was selected to be laid off because her time was charged primarily to overhead; the Inertial Guidance Laboratory's budget could not support the continued employment of the plaintiff and two other individuals whose time was primarily charged to overhead; there was no billable work for the plaintiff and the others to perform; and the

plaintiff's skill set was so narrow that Mr. Moore could not use her for other work.  *Motion*, Ex. A, 205:22-206:23; Ex. B, ¶¶ 12-13.

17.   The plaintiff asked Mr. Moore to stop reminding her to update her resume and look for another job.  Mr. Moore complied with the request.  Id. at Ex. A, 103:4-20; Ex. B, ¶ 16; Ex. K, 29:6-12.  Mr. Moore was only trying to help the plaintiff when he reminded her to look for a new job and update her resume.  Id. at Ex. A, 103:4-105:5; Ex. B, ¶ 16; *Response*, p. 5, ¶ 21.  Mr. Moore "resumed 'reminding' [the plaintiff] to look for new position" in early December 2009.  Doc. #113, ¶ 23.

18.   On September 9, 2009, the plaintiff asked for information about requesting accommodations.  On September 10, 2009, Mr. Moore responded that she needed to go to the medical department to self-identify, fill out forms, and receive an assessment.  *Motion*, Ex. B, ¶ 17; Doc. 113, ¶ 16.

19.   On September 10, 2009, the plaintiff made two requests for "accommodations": (1) notify her within two business days of being served with legal documents concerning her; and (2) give her an accounting and explanation before adjustments were made to her paycheck.  *Motion*, Ex. A, 54:7-56:16, 80:9-11, 87:8-20; *Response*, p. 6, ¶ 23; Doc #104, pp. 21-22.

20.   The plaintiff requested a third accommodation on September 14, 2009.  She requested that LMC contact her doctor before giving her negative news about her job.  Id. at Ex. A, 105:12-15; Ex. N; *Response*, p. 6, ¶ 24; Doc #104, pp. 21-22.

21.   The plaintiff went on medical leave from October 8, 2009, until November 16, 2009.  *Motion*, Ex. A, 102:4-21; *Response*, ¶ 27.

22.   The plaintiff took additional medical leave from January 18, 2010, until approximately May 3, 2010 to undergo surgery and seek psychiatric care.  *Motion*, Ex. A, 38:13-39:6; *Response*, p. 9, ¶ 31.

23.   Before the plaintiff returned from leave, Ms. Campbell informed her that because of the large volume of garnishments LMC processes, it was not able to guarantee the plaintiff would receive the advance notice she requested.  *Motion*, Ex. D, ¶ 14; Ex. R,¶ 5; *Response*, p. 9, ¶ 32. Only two employees were responsible for processing approximately 3,373 court orders per week for 140,000 LMC employees in 2009, and they did not have a way to single out one employee and guarantee that they would provide her with additional notice above and beyond what is required by state law.  *Motion*, Ex. D, ¶ 3; Ex. R, ¶ 5; Ex. Y, ¶ 3; *Response*, p. 9, ¶ 32.

24.   Ms. Campbell also told the plaintiff that although LMC could not convey information through her doctor, the plaintiff could immediately leave work to meet her doctor as soon as she received her layoff notice.  *Motion*, Ex. R, ¶ 5; *Response*, p. 9, ¶ 33.

25.   Between July 2008 and June 2010, LMC provided the plaintiff with over nine months of medical leave.  *Motion*, Ex. Z, ¶ 1; *Response*, ¶ 34.

26. When the plaintiff was working in 2010, LMC provided her with a flexible working schedule, including reduced and part-time working hours, to allow her to recover from surgeries and periods of illness.  *Motion*, Ex. B, ¶ 18; Ex. Z, ¶ 5.

27.   LMC delayed the plaintiff's layoff while she was on medical leave pursuant to its Absence from Work policy.  *Motion*, Ex. J, ¶¶ 13, 14.

28.   On June 7, 2010, the plaintiff received notice she was going to be laid off.  Her

last day of work was June 21, 2010.  *Motion*, Ex. A, 206:3-5; Ex. B, ¶ 20; Ex. J, ¶¶ 13-14.

29.   LMC did not hire anyone to replace the plaintiff.  *Motion*, Ex. B, ¶ 21; *Response*, p. 10, ¶ 39.

30.   At the time the plaintiff was laid off, three employees in Moore's group, including the plaintiff, charged a significant amount of their time to overhead, and all three were laid off: one took a voluntary layoff in 2009, and the other two were laid off in 2010.  *Motion*, Ex. B, ¶ 12; *Response*, p. 10, ¶ 40.

The Complaint asserts four claims for relief under the Americans with Disabilities Act ("ADA").  In Claim One, the plaintiff alleges that LMC refused to provide her with reasonable accommodations for her disabilities.  In Claim Two, she asserts that LMC maintained a hostile work environment based on her disabilities.  Claim Three alleges that LMC retaliated against the plaintiff because she requested a reasonable accommodation on July 21, 2009.  Claim Four alleges that the plaintiff was the victim of a discriminatory reduction in workforce.

## III.   ANALYSIS

### A.   Claim One: Failure to Accommodate

In Claim One, the plaintiff alleges that in March 2005 she notified her supervisors in Sunnyvale, California, that she had just been diagnosed with Attention Deficit Disorder ("ADD").  *Complaint*, p. 3, ¶ 6.  She did not request any accommodations at that time.  Id.  On August 1, 2008, the plaintiff developed new symptoms and was "shortly thereafter" diagnosed with and treated for a major anxiety disorder.  Id. at ¶ 7.  On July 21, 2009, she emailed to Mr. Moore a request for an accommodation regarding LMC's garnishment process.  Id. at ¶¶ 8-9;

*Motion*, Ex. A, 120:10-121:3.[3]  LMC failed to accommodate the plaintiff's ADD when it refused

to communicate with her in writing.  *Motion*, ¶¶ 5, 12-13, 15.  LMC did not provide the

requested accommodations, nor did it suggest alternative accommodations.  Id. at ¶¶ 15-20.

As a preliminary matter, the record does not contain any evidence to show that the

plaintiff requested that LMC reasonably accommodate a disability by engaging only in written

communication.  In addition, the plaintiff does not include in this lawsuit her request that LMC

notify her doctor of negative news about her job.  *Motion*, Ex. A, 56:3-16.  Finally, she does not

address in her Complaint or her Response the request that Mr. Moore cease telling her to look for

a job.  Therefore, her reasonable accommodation claim is limited to her request for notification

regarding garnishments.

The ADA prohibits employment discrimination "against a qualified individual on the

basis of disability in regard to job application procedures, the hiring, advancement, or discharge

of employees, employee compensation, job training, and other terms, conditions, and privileges

of employment."  42 U.S.C. § 12112(a).  To qualify for relief under the ADA, the plaintiff must

establish that she (1) is disabled within the meaning of the ADA; (2) is qualified, with or without

---

[3]The plaintiff also states that her doctor sent a letter to LMC's medical department on
September 28, 2009, documenting the plaintiff's disabilities and requesting specific
accommodations for the plaintiff.  *Complaint*, ¶ 11.  The plaintiff does not address in her
statement of facts, nor does she include in her exhibits, a doctor's letter dated September 28,
2009.  One of her exhibits is a copy of a letter from Claire Karam, Ph.D., which identifies the
plaintiff's diagnoses, her symptoms, and their effect on her ability to work.  Dr. Karam states
that the plaintiff "could not perform the essential job functions of her position as an optical
engineer at Lockheed Martin without an accommodation assuring her that she would receive
notice if another garnishment of her wages occurred.  In addition, because of her ADHD, she had
difficulty communicating her needs orally and needed to be allowed to discuss reasonable
accommodation ideas in writing."  Doc. #104, p. 15.  However, the letter is dated June 5, 2011--
almost one year after she was laid off.

reasonable accommodation, to perform the essential functions of the job; and (3) was discriminated against because of her disability. White v. York Intern. Corp., 45 F.3d 357, 360-61 (10th Cir. 1995). Discrimination under the ADA can include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." Davidson v. America Online, Inc., 337 F.3d 1179, 1188-89 (10th Cir. 2003); 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9.

LMC does not dispute that, for purposes of their Motion, the plaintiff is disabled and suffered an adverse action when she was laid off. *Motion*, p. 10. LMC argues that the plaintiff cannot establish a *prima facie* case because she cannot prove that she was qualified to perform the essential functions of her job. In support of this argument, LMC states that the plaintiff "admits she could not perform *any* job functions when her PTSD was triggered" and "she represented to Social Security and her long-term disability insurer that she was totally disabled as early as one month after she was laid off." *Motion*, pp. 10-11 (emphasis in original). The fact that the plaintiff could not perform any job functions when her PTSD was triggered does not prove that she was not qualified to perform the essential functions of her job; it shows that removal of known triggers (such as garnishment of her wages without notice) could be a reasonable accommodation. Moreover, the plaintiff's representation to the Social Security Administration that she was totally disabled one month after she was laid off does not prove that she was not qualified to perform the essential functions of her job prior to that time.

LMC further argues that the plaintiff's requests are moot because LMC did not receive another order to garnish her wages after the July 2009 garnishment. *Motion*, p. 13. The plaintiff made her first request for advanced notice of garnishments on July 21, 2009--after her earnings

were garnished the second time.  *Response*, pp. 13-14.  It is undisputed that the plaintiff's

earnings were not garnished again during her employment with LMC and will not be garnished

again because she is no longer employed by LMC.  Moreover, there is no competent evidence in

the record to show that the plaintiff requested from LMC an *assurance* she would receive

advanced notice (as opposed to *actual* advanced notice) to accommodate her disabilities.

Therefore, LMC's failure to accommodate her request is moot, and the Motion should be granted

insofar as it seeks judgment in favor of LMC on Claim One.

### B.   Claim Two: Hostile Work Environment

In Claim Two, the plaintiff alleges that she was subjected to a hostile work environment

because of her disabilities.  *Complaint*, pp. 6-7.

Hostile work environments are actionable under the ADA.  Lanman v. Johnson County,

Kansas, 393 F.3d 1151, 1155 (10th Cir. 2004).  In order to prevail on a claim for hostile

environment, a plaintiff must show that the employer permitted a work environment "permeated

with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working environment, and

that the victim was targeted for harassment because of" her disability.  See id.;  Herrera v. Lufkin

Indus., Inc., 474 F.3d 675, 680 (10th Cir. 2007) (internal quotations and citations omitted).  The

conduct must be both objectively and subjectively hostile.  Id.

The plaintiff does not provide any evidence to create a material fact dispute regarding

whether she was subjected to a hostile work environment.  *Response*, pp. 17-18.  Instead, she

argues that LMC created a hostile work environment because it failed to provide a reasonable

accommodation.  The plaintiff's evidence regarding LMC's failure to accommodate is not

sufficient to establish the severe and pervasive conduct required for a hostile environment claim. LMC's Motion should be granted insofar as it seeks summary judgment in favor of LMC on the plaintiff's hostile environment claim.

### C.  Claim Three: Retaliation

In Claim Three, the plaintiff alleges that she was laid off in retaliation for attempting to obtain an accommodation.  *Complaint*, pp. 8-9; *Response*, p. 18.  The undisputed facts show that the plaintiff sent an email to Mr. Moore on July 21, 2009, requesting that LMC notify her immediately if it is served with a wage garnishment.  On or about August 31, 2009, Mr. Moore notified the plaintiff that she was "on the long list for lay off (or words to that effect)," and he instructed her to spend her time updating her resume and searching for a new job.  On September 10th and 14th, 2009, the plaintiff requested that LMC (1) notify her within two business days of being served with legal documents concerning her; (2) give her an accounting and explanation before adjustments were made to her paycheck; and (3) contact her doctor before giving her negative news about her job.  On June 7, 2010, the plaintiff received notice she was going to be laid off, and her last day of work was June 21, 2010.

To establish a *prima facie* case of retaliation under the ADA, the plaintiff must show: "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and employer's adverse action."  Morgan v. Hilti, Inc., 108 F.3d 1319, 1324 (10th Cir. 1997).  A request for reasonable accommodation can be a protected activity under the ADA.  42 U.S.C. § 12203; Equal Emp't Opportunity Comm'n v. Picture People, Inc., Civil Action No. 09-cv-02315-PAB-CBS, 2011 WL 1754522, at *7 (D.Colo. May 9, 2011).  "If a

plaintiff establishes a prima facie case, the defendant has the burden of coming forth with a legitimate, nondiscriminatory reason for adverse action.  If the defendant can do so, the burden shifts back to the plaintiff to show that the reason given by the employer is mere pretext for the real, discriminatory reason for the adverse action." Id. (internal quotations omitted) (quoting Butler v. City of Prairie Village, Kan., 172 F.3d 736, 752 (10th Cir. 1999)).

In determining whether an employment action is adverse, the court looks at whether a "reasonable employee" would have been dissuaded from seeking an accommodation for a disability.  Proctor v. United Parcel Service, 502 F.3d 1200, 1208 n.4 (10th Cir. 2007).  To establish the existence of a causal connection, the plaintiff "may proffer evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Id. at 1208 (internal quotations and citation omitted).

The plaintiff was laid off almost a year after her first request for an accommodation and nine months after her second request for accommodations.  This time period is too long to support a presumption of causation, and the plaintiff does not present any additional evidence to establish a causal connection between her requests and her actual lay off. Id.  However, one month after she sought her first accommodation, the plaintiff was notified that she was "on the long list for lay off" and that she should look for a new job.  It is possible that notification of layoff and instructions to search for a new job could dissuade a reasonable employee from seeking an accommodation.  In addition, the one month time period is short enough to support an inference of retaliatory motive. See id.  I find that the plaintiff has established a *prima facie* case of retaliation.

LMC has presented evidence to show that after receiving the Executive Vice President's August 17, 2009, memorandum regarding a workforce reduction, Mr. Moore was directed to identify employees who would be laid off as part of the company-wide reduction in force; the plaintiff's position was identified for lay off because her time was charged primarily to overhead; the Inertial Guidance Laboratory's budget could not support the continued employment of the plaintiff and two other individuals whose time was primarily charged to overhead; there was no billable work for the plaintiff and the others to perform; and the plaintiff's skill set was so narrow that Mr. Moore could not use her for other work.  *Motion*, Ex. B, ¶¶ 11-14.  LMC's evidence is sufficient to establish a legitimate, nondiscriminatory reason for its adverse action.

The plaintiff has not presented any competent evidence to show that the reasons given by LMC for identifying her position for lay off are mere pretext for discrimination.  The Motion should be granted insofar as it seeks summary judgment in favor of LMC on Claim Three.

### D.  Claim Four: Discriminatory Reduction in Workforce

In Claim Four, the plaintiff claims that she was laid off because of her disability. Specifically, she states that LMC did not consider all of her skills when making its decision to lay her off and LMC is biased against employees with disabilities who use more leave time than employees without disabilities.  *Complaint*, pp. 10-11.

To establish a *prima facie* case of discriminatory discharge under the ADA, the plaintiff must show that "(1) she was qualified, with or without reasonable accommodation to perform the essential functions of her job; and (2) her employer terminated her employment under circumstances giving rise to an inference that the action was based on her disability."  Selenke v.

<u>Medical Imaging of Colorado</u>, 248 F.3d 1249, 1259 (10th Cir. 2001).  If the plaintiff establishes her *prima facie* case, the burden shifts to the employer to establish a legitimate, nondiscriminatory reason for the challenged action.  <u>Id.</u>  If the defendant meets this burden, the plaintiff may offer evidence to show that the defendant's proffered reason is pretext for discrimination.  <u>Id.</u>  "At all times, the plaintiff retains the ultimate burden of proving such discrimination."  <u>Id.</u>

Regardless of whether the plaintiff can establish a *prima facie* case of discriminatory termination, LMC has established a legitimate, nondiscriminatory reason for its adverse action.  As stated in my analysis of Claim Three, the plaintiff has not presented any competent evidence to show that the reasons given by LMC for identifying her position for lay off are mere pretext for discrimination.  The Motion should be granted to the extent it seeks summary judgment in favor of LMC on Claim Four.

## IV.   CONCLUSION

For all of these reasons, I respectfully RECOMMEND that Defendant's Motion for Summary Judgment [Doc. #90] be GRANTED.[4]

---

[4]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  <u>In re Key Energy Resources Inc.</u>, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated December 9, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge